# United States District Court
## EASTERN DISTRICT OF OKLAHOMA

**In the matter of the search of:**

INFORMATION ASSOCIATED WITH PHONE NUMBER [redacted]7959 THAT IS CONTROLLED BY CELLCO, PARTNERSHIP, LLP DBA, VERIZON WIRELESS

**Case No.** 25-MJ-66-GLJ

## APPLICATION FOR SEARCH WARRANT

I, Raymond Nelson, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the District of **NEW JERSEY** *(identify the person or describe property to be searched and give its location)*:

**SEE ATTACHMENT "A"**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT "B"**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to an investigation of Murder in Indian Country, in violation of Title 18, United States Code, Section(s) 1111(a), 1151, and 1153, and the application is based on these facts:

☒ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: ____________) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

RAYMOND NELSON
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to :

Date: February 28, 2025

City and state: Muskogee, Oklahoma

*Judge's signature*

GERALD L. JACKSON
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Raymond Nelson being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises owned, maintained, controlled, or operated by **CELLCO PARTNERSHIP, LLP DBA VERIZON WIRELESS (PROVIDER)**, a wireless provider headquartered 1 Verizon Way, Basking Ridge, NJ 07920. A previous search warrant, Case No. 24-MJ-398-DES, for the same information was served on 27 November, 2024 to vsat.cct@one.verizon.com. On 31 December, 2024, I received an email from mail@sf-notifications.com. The email appeared suspicious. I forwarded the message to the FBI enterprise security division. They identified the email and download link as malicious and instructed me not to follow the link or download the file. A later review of other search warrant returns for Verizon showed the email was Verizon's standard method of providing returns. Therefore, I am requesting the same information again from Verizon. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require **PROVIDER** to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2. I have been employed as a Special Agent of the FBI since March 2018 and was assigned

internet crimes against children. I have been assigned to the Oklahoma City Division, Muskogee Resident Agency of the FBI since January of 2024, and work Indian Country criminal investigations in the Eastern District of Oklahoma. During that time, I have conducted a wide variety of investigations, including numerous cases involving child pornography violent crimes against children, assault, sex assault, and homicide. As a Special Agent with the FBI, I am a law enforcement officer of the United States as defined by 18 U.S.C. § 2510(7), meaning that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the U.S. Code. Moreover, I am authorized to seek and execute federal arrest and search warrants for federal criminal offenses, including offenses related to and including of 18 U.S.C. §§ 1111(a), 1151, and 1153 (Murder in Indian Country).

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that a violation of 18 U.S.C. §§ 1111(a), 1151, and 1153 (Murder in Indian Country) has been committed by David Allen Lee (**LEE**). There is also probable cause to search the information described in Attachment A for evidence of this crime, as described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), &

(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

6. The facts and circumstances alleged in this Affidavit occurred in the Eastern District of Oklahoma, within the boundaries of the Cherokee Nation, and in Indian Country. Subject, David Allen Lee (**LEE**), is an enrolled member of the Cherokee Nation, a federally recognized Indian tribe, and has some quantum of Indian blood.

7. On July 1, 2024, at 9:14pm, the Tahlequah Police Department responded to a garden apartments complex for a 911 call for medical assistance made from [redacted]7959. When law enforcement arrived, **LEE** was standing outside. When **LEE** saw law enforcement, he quickly ran inside an apartment and locked the door.

8. Law enforcement attempted to communicate with **LEE** and one officer believed he saw **LEE** thru a window in possession of a firearm. Law enforcement learned from one or more neighbors that **LEE** did not live in the apartment. A neighbor stated that, around 4 or 5 p.m., he heard loud scuffling coming from the apartment that woke him up and shook the walls. Officers backed off and called the Cherokee Nation Marshals Special Operations Team.

9. On July 1, 2024, at approximately 10:30pm, the Marshals Service began calling **LEE** out of the house. At approximately 10:40pm, **LEE** left the house and was taken into custody. When asked if there was anyone else in the home, **LEE** replied that his stepfather was inside and dead. The deceased resident of the apartment (the Victim) was found sitting in a chair inside the home with a wound to his torso and a wound to his shoulder, consistent with having been stabbed.

A medical examiner determined that the Victim's cause of death was stab wound of the chest and that the manner of death was homicide.

10. According to a witness, the Victim called the witness at about 9:15am and said **LEE** was there and was mad. The witness asked **LEE** what was wrong and **LEE** said he needed money. The witness indicated that the witness did not have money for **LEE** and **LEE** should not come to the witness's home.

11. According to another witness who was present at the Victim's home in the morning, **LEE** appeared highly agitated.

12. Forensic evidence implicates Lee in the homicide.

13. **LEE** was indicted for Murder in Indian Country in December 2024.

14. **LEE's** cell phone number is [redacted]7959. An open source search for the cell phone number [redacted]7959 revealed the cell provider to be **CELLCO PARTNERSHIP, LLP DBA VERIZON WIRELESS (PROVIDER).** The IMEI # is [redacted] There is probable cause to believe that information associated with the cell phone number [redacted]7959 may contain evidence of texts, calls, location data, and/or other relevant information that sheds light on the relevant events occurring before, during, and after the incident.

15. Based upon my training and experience, phone records can contain location data and communications, including phone calls and text messages, and can shed light on events occurring before, during, and after a crime. In my training and experience, examining such data

can uncover, among other things, evidence that reveals or suggests who possessed or used a phone number or device.

16. In my training and experience, I have learned that **PROVIDER** is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and unretrieved voicemail, text, and multimedia messages for **PROVIDER** subscribers may be located on the computers of **PROVIDER.** Further, I am aware that **PROVIDER's** computers contain information and other stored electronic communications belonging to unrelated third parties.

17. Wireless phone providers often provide their subscribers with voicemail services. In general, a provider will store voicemail messages on behalf of a particular subscriber until the subscriber deletes the voicemail. If the subscriber does not delete the message, the message may remain in the system of **PROVIDER** for weeks or months.

18. Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by **PROVIDER** for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

19. Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

20. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

21. Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

22. Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates, times and sometimes, places, of payments and the means and source of payment (including any credit card or bank account number).

23. In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

24. As explained below, information stored at the wireless provider, including that described above, may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the data pertaining to a particular cellular device that is retained by a wireless provider can indicate who has used or controlled the cellular device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, data collected at the time of account sign-up, information relating to account payments, and communications (and the data associated with the foregoing, such as date and time) may indicate who used or controlled a cellular device at a relevant time. Further, such stored electronic data can show how and when the cellular device and associated cellular service were accessed or used. Such "timeline" information allows investigators to understand the chronological context of cellular device usage, account access, and events relating to the crime under investigation. This "timeline" information may tend to either inculpate or exculpate the cellular device owner. Additionally, information stored by the wireless provider may indicate the geographic location of the cellular device and user at a particular time (e.g., historic cell-site location information; location integrated into an image or video sent via text message to include both metadata and the physical location displayed in an image or video). Last, stored electronic data may provide relevant insight into the state of mind of the cellular device's owner and/or user as it relates to the offense under investigation. For example, information relating to the cellular device in the possession of the wireless provider may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

25. In my training and experience, I have learned and know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

26. Based on my training and experience, I know that **PROVIDER** can collect cell-site data. I also know that wireless providers such as **PROVIDER** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

27. I know that Verizon also collects per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

28. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require **PROVIDER** to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

29. Although the incident occurred on or about July 1, 2024, I submit there is probable cause to believe that information about control of the phone and relationship of **LEE** and the Victim may be found dating back to the creation of the phone account.

## CONCLUSION

30. Based on the forgoing, I request that the Court issue the proposed search warrant.

31. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

32. The government will execute this warrant by serving the warrant on **PROVIDER**. Because the warrant will be served on **PROVIDER**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Raymond Nelson
Special Agent
Federal Bureau of Investigation (FBI)

Sworn on February 28, 2025

UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be disclosed by CELLCO PARTNERSHIP, LLP DBA VERIZON WIRELESS

To the extent that the information described in Attachment A is within the possession, custody, or control of **CELLCO PARTNERSHIP, LLP DBA VERIZON WIRELESS,** regardless of whether such information is located within or outside of the United States, and including any information that has been deleted but is still available to **CELLCO PARTNERSHIP, LLP DBA VERIZON WIRELESS,** or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), **CELLCO PARTNERSHIP, LLP DBA VERIZON WIRELESS** is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period January 1, 2024 to November 19, 2024:

a. The following information about the customers or subscribers of the Account:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International

Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information, including the contents of communications, relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, as well as per-call measurement data (also known as the "real-time tool" or "RTT" data).

c. All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier;

d. All existing printouts from original storage of all of the text messages described above;

e. All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates

and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations;

f. All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

g. All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

h. Detailed billing records, showing all billable calls including outgoing digits;

i. All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number);

j. Incoming and outgoing telephone numbers;

k. All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

l. All records pertaining to communications between **CELLCO PARTNERSHIP, LLP DBA VERIZON WIRELESS** and any person regarding the account or identifier, including contacts with support services and records of actions taken.

II. **CELLCO PARTNERSHIP, LLP DBA VERIZON WIRELESS** is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

**II. Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of a violation of 18 U.S.C. §§ 1111(a), 1151, and 1153 (Murder in Indian Country) involving David Allen Lee for the time period January 1, 2024 to November 19, 2024, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a. The death of the Victim, the relationship between David Allen Lee and the Victim, the motive for killing the victim, communications between David Allen Lee and the Victim, David Allen Lee's whereabouts on July 1, 2024, and efforts to cover up the crime;

b. The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s);

c. Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crime under investigation;

d. Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

e. Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

f. The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, ________________________________, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by **CELLCO PARTNERSHIP, LLP DBA VERIZON WIRELESS**, and my official title is ____________________________. I am a custodian of records for **CELLCO PARTNERSHIP, LLP DBA VERIZON WIRELESS**. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of **CELLCO PARTNERSHIP, LLP DBA VERIZON WIRELESS** and that I am the custodian of the attached records consisting of __________ (pages/CDs/kilobytes). I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b. such records were kept in the ordinary course of a regularly conducted business activity of **CELLCO PARTNERSHIP, LLP DBA VERIZON WIRELESS**; and

c. such records were made by **CELLCO PARTNERSHIP, LLP DBA VERIZON WIRELESS** as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_________________________     _________________________________

Date     Signature